Patrick G. Byrne (Nevada Bar #7636)
Bradley T. Austin, Esq. (Nevada Bar #13064)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Tel.  702.784.5200
Fax.  702.784.5252
Email: pbyrne@swlaw.com
        baustin@swlaw.com

Douglas W. Greene (admitted *pro hac vice*)
Genevieve G. York-Erwin (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone:  212.589.4200
Email: dgreene@bakerlaw.com
        gyorkerwin@bakerlaw.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

IN RE BIOVIE INC. SECURITIES
LITIGATION

Case No. 3:24-cv-00035-MMD-CSD

**DEFENDANTS' REPLY IN
FURTHER SUPPORT OF THEIR
REQUEST FOR JUDICIAL NOTICE
AND NOTICE OF INCORPORATION
BY REFERENCE IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS THE AMENDED
COMPLAINT**

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

**TABLE OF CONTENTS**

**Page**

INTRODUCTION..............................................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.       Exhibits 1-3, 6, 12-15, 17, and 22-25 Are Incorporated by Reference and Should Be Considered. ........................................................................................3

    II.     The Court Should Take Judicial Notice of Exhibits 8, 16, and 26..............................4

    III.    The Court Should Take Judicial Notice of Exhibits 11 and 19....................................5

    IV.    The Court Should Take Judicial Notice of Exhibits 4, 5, and 7...................................7

    V.     The Court Should Take Judicial Notice of Exhibits 9-10, 18, 20-21, and the Webpages Referred to in the RJN Opposition as "Exhibits 27-29"............................8

CONCLUSION ...............................................................................................................................11

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AECOM v. Zurich Am. Ins. Co.*,
2021 WL 6425546 (C.D. Cal. Dec. 1, 2021), *aff'd*, 2023 WL 1281675 (9th Cir. Jan. 31, 2023) .................................................................................................................. 8

*In re Apple Inc. Sec. Litig.*,
678 F. Supp. 3d 1147 (N.D. Cal. 2023) .................................................................. 10

*Belodoff v. Netlist, Inc.*,
2008 WL 2356699 (C.D. Cal. May 30, 2008)...................................................... 6, 8, 9

*Benson v. Oberholzer*,
2022 WL 2334037 (C.D. Cal. May 18, 2022)....................................................... 3, 7

*In re CV Therapeutics, Inc.*,
2004 WL 1753251 (N.D. Cal. Aug. 5, 2004)............................................................. 6

*Di Donato v. Insys Therapeutics Inc.*,
2017 WL 3268797 (D. Ariz. Aug. 1, 2017) .............................................................. 6

*Dresner v. Silverback Therapeutics, Inc.*,
2023 WL 2913755 (W.D. Wash. Apr. 12, 2023) ..................................................... 10

*Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*,
2021 WL 1056549 (N.D. Cal. Mar. 19, 2021)........................................................... 8

*Ferreira v. Funko Inc.*,
2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) ........................................................... 6

*Flores v. Brown*,
2024 WL 3014114 (D. Or. May 21, 2024)................................................................ 3

*Gompper v. Visx, Inc.*,
298 F.3d 893 (9th Cir. 2002)..................................................................................... 2

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019) ............................................................... 6

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007)...................................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)............................................................................... 1, 3, 4

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

*Luo v. Spectrum Pharms., Inc.*,
    2024 WL 4443323 (D. Nev. Oct. 7, 2024) ................................................................ 10

*McGovney v. Aerohive Networks, Inc.*,
    367 F. Supp. 3d 1038 (N.D. Cal. 2019) ................................................................... 4

*In re MGM Mirage Sec. Litig.*,
    2013 WL 5435832 (D. Nev. Sept. 26, 2013) ............................................................ 8

*In re Netflix, Inc. Sec. Litig.*,
    2005 WL 1562858 (N.D. Cal. June 28, 2005) ........................................................ 6

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ..........................................................................................*passim*

*Pardi v. Tricida, Inc.*,
    2024 WL 1056013 (N.D. Cal. Mar. 11, 2024) .................................................... 8, 9

*Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*,
    2024 WL 4251896 (N.D. Cal. Sept. 17, 2024) .................................................... 7, 8

*In re PTC Therapeutics, Inc. Sec. Litig.*,
    2017 WL 3705801 (D.N.J. Aug. 28, 2017) ............................................................ 6

*Reddick v. Chater*,
    157 F.3d 715 (9th Cir. 1998) ................................................................................. 10

*In re Silver Lake Grp., LLC Sec. Litig.*,
    108 F.4th 1178 (9th Cir. 2024) ............................................................................. 10

*Sneed v. AcelRx Pharms., Inc.*,
    2022 WL 4544721 (N.D. Cal. Sept. 28, 2022) ....................................................... 8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................. 1

*Strezsak v. Ardelyx Inc.*,
    2024 WL 1160900 (N.D. Cal. Mar. 18, 2024) ....................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................. 1, 2, 8, 10

*Weinstein v. Kirkman*,
    2013 WL 12121125 (W.D. Wash. Sept. 16, 2013) ............................................... 10

*Woods v. Berryhill*,
    2019 WL 4734680 (D. Nev. Sept. 28, 2019) ........................................................ 10

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

iii

**Statutes**

15 U.S.C. § 78u-5(e) ................................................................................................................... 5

**Rules**

Fed. R. Evid. 201 ................................................................................................................... 2, 8

**INTRODUCTION**

Plaintiffs do not dispute that Exhibits 1-3, 6, 8, 12-17, and 22-26, are either incorporated by reference into the AC or are otherwise judicially noticeable. Indeed, Plaintiffs concede that they "may be considered for their contents" since "Plaintiffs have quoted or otherwise relied upon" them. *See* Pls' Opposition to Defs' RJN (Dkt. #45; "RJN Opp.") at 11-12.[1] Instead, Plaintiffs argue that the Court may not use any of these materials to "dispute facts stated in a well-pleaded complaint." *Id*. Setting aside the issue of whether the AC is "well-pleaded,"[2] that is not the purpose for which these documents are offered. Defendants offer these documents to provide necessary context for determining whether Plaintiffs have sufficiently pleaded that any particular challenged statement was false or misleading when viewed by a reasonable investor in its full context, and for weighing the competing inferences to be drawn from all of the facts and circumstances with respect to scienter. *See* Defs' Request for Judicial Notice (Dkt. #43; "RJN") at 1-2; *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) (whether a statement is false or misleading "always depends on context" and requires consideration of, among other things, "all its surrounding text, including hedges, disclaimers, and apparently conflicting information" as well as "the customs and practices of the relevant industry"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in determining whether plaintiff has pleaded the requisite "strong inference" of scienter).

As for the remainder of the documents at issue in the RJN (Exhibits 4-5, 7, 9-11, 18-21, and three webpages Plaintiffs denominate "Exhibits" 27-29), Plaintiffs claim submission of these

---

[1] To the extent ambiguous language in the RJN Opposition could be read as suggesting the Court should limit its consideration of documents incorporated by reference to only those parts Plaintiffs have quoted, that is exactly the kind of gamesmanship incorporation by reference is meant to prevent. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference intended to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken— or doom—their claims").

[2] *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . .").

1

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

materials is improper and urge the Court not to consider them. However, each of these documents is publicly available and not subject to reasonable dispute, and courts routinely take judicial notice of precisely these types of documents when deciding motions to dismiss securities class actions.

The federal securities laws—as construed by the Supreme Court in *Tellabs* and *Omnicare*—require courts to consider the full range of publicly available, judicially noticeable, and incorporated documents and information for context when evaluating the sufficiency of securities class action complaints. *See* RJN 1-2. Defendants are not presenting a "counter-factual narrative" (RJN Opp. 2); they are simply asking the Court to objectively contextualize Plaintiffs' falsity allegations, and evaluate Plaintiffs' scienter pleadings in light of the competing inferences to be drawn from materials properly subject to judicial notice. Plaintiffs are not entitled to have their falsity and scienter allegations evaluated in a vacuum, nor are they entitled to have all inferences concerning scienter drawn in their favor. *See Gompper v. Visx, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002) ("To accept plaintiffs' argument that the court is required to consider only inferences favorable to their position would be to eviscerate the [Reform Act]'s strong inference requirement by allowing plaintiffs to plead in a vacuum."). Indeed, the Reform Act was enacted precisely to prevent such gamesmanship. *See Tellabs*, 551 U.S. at 313 (describing how Congress enacted the Reform Act "[a]s a check against abusive litigation"). Consideration of the Exhibits submitted with and/or referenced in the Defendants' Motion to Dismiss (Dkt. #38; "MTD") is not only fair, prudent, and permitted under the incorporation by reference doctrine and Federal Rule of Evidence 201, it is required by *Omnicare* and *Tellabs*. Nowhere in the RJN Opposition do Plaintiffs address or contend with this controlling substantive securities law.[3]

In sum, Plaintiffs have cherry-picked their challenged statements, taken them out of context, and now complain of those statements being evaluated against their full contextual background, as *Omnicare* and *Tellabs* require. Plaintiffs cannot plead around the fatal flaws in their legal theories by selectively choosing and quoting documents and then insisting the Court ignore the remainder of

---

[3] Indeed, the RJN Opposition does not cite the Supreme Court's *Omnicare* decision at any point, and concedes that *Tellabs* requires the Court to consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." RJN Opp. 4.

those documents and other important context. While the materials at issue in the RJN are not necessary to the success of the MTD, they further demonstrate the AC's inadequacy and may properly be considered when deciding the MTD without converting it into a motion for summary judgment. *See, e.g.*, *Flores v. Brown*, 2024 WL 3014114, at *1 (D. Or. May 21, 2024) ("Consideration of extrinsic evidence does not convert a motion to dismiss into a motion for summary judgment ... when the Court considers . . . documents incorporated by reference in the complaint or matters of judicial notice."); *Benson v. Oberholzer*, 2022 WL 2334037, at *2 (C.D. Cal. May 18, 2022) ("Materials that are the subject of judicial notice . . . are not 'outside' the complaint and may be considered" on a motion to dismiss). For the reasons discussed herein and in the RJN, it is both appropriate under the federal procedural rules and necessary under substantive securities law for the Court to consider and/or take judicial notice of each document attached as an Exhibit to the York-Erwin Declaration (Dkt. #39) via Appendix volumes I through III (Dkt. #40-42) and/or referenced in the MTD when deciding that motion.

## ARGUMENT

### I.     Exhibits 1-3, 6, 12-15, 17, and 22-25 Are Incorporated by Reference and Should Be Considered.

A document is "incorporated by reference" into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Orexigen*, 899 F.3d at 1002 ("The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."). Here, Plaintiffs do not dispute that Exhibits 1-3, 6, 12-15, 17, and 22-25 are incorporated by reference into the AC; they argue only that "consideration of these exhibits for the purpose of disputing the factual accuracy of Plaintiffs' well-pled allegations is improper." RJN Opp. 13. They fail to cite any instance where these documents are cited to dispute an alleged fact, however, and, as reflected in the MTD and discussed in the RJN, Defendants provide and cite to these materials to enable the Court to evaluate Plaintiffs' claims of falsity and scienter in their appropriate and required context.

3

Because each of Exhibits 1-3, 6, 12-15, 17, and 22-25 is incorporated by reference into the AC, it is appropriate for this Court to consider them when deciding the MTD. *See, e.g.*, *Orexigen*, 899 F.3d at 1003-07 (district court properly considered materials incorporated by reference into securities complaint); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1050-51 (N.D. Cal. 2019) (considering SEC filings and earnings call transcripts incorporated by reference into securities complaint).

**II.      The Court Should Take Judicial Notice of Exhibits 8, 16, and 26.**

Nor do Plaintiffs dispute that the Court may take judicial notice of Exhibit 8 (BioVie's Press Release issued Sept. 26, 2023), Exhibit 16 (BioVie's investor presentation that accompanied its conference call held on Nov. 1, 2023), and Exhibit 26 (BioVie's Form 10-K filed with the SEC on Sept. 27, 2022). RJN Opp. 11. Instead, Plaintiffs argue that Defendants failed to "clearly specify what fact or facts" are to be judicially noticed. *Id.*

Needless to say, Defendants request that the Court consider the parts of these exhibits that are referenced in the MTD, and any other parts of the exhibits that the Court deems necessary to properly evaluate Plaintiffs' claims in context. Specifically, Defendants cite to:

- **Exhibit 8** to provide context for Plaintiffs' allegations regarding BioVie's decision to increase enrollment in NM101 in Nov. 2022 (*i.e.*, that this decision was announced weeks before the first Site 145 Audit allegedly took place; that the NM101 trial protocol initially specified enrolling at least 316 patients so it would have industry-standard 80% "powering" even assuming 20% attrition; and that the protocol allowed for an optional interim DSMB review and/or expanding target enrollment once 50% of the initial target enrollment had completed the study). *See* MTD 4; Ex. 8 at 186 (describing NM101 as a "multicenter study of NE3107 in 316 to 400 patients" and explaining that the "study was powered with 316 patients, assuming a 20% drop-out rate");

- **Exhibit 16** to provide context for Defendants' challenged opinion statements interpreting blinded clinical data, including further explanations and support as to

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

how the blinded data suggested Bezisterim was biologically active and appeared to be having a biological effect on cognitive, biomarker, and other endpoints. *See* MTD 7; Ex. 16 at 255-59 (discussing blinded data indicating "reduced amyloid burden," that the "imaging substudy [] points to increased brain volumes," and "confirmation of inflammatory and metabolic impact"); and

- **Exhibit 26** to provide the Court with cautionary language included in BioVie's 2021 Form 10-K concerning the risks attendant to clinical studies, which the Court is required to consider in determining the applicability of the Reform Act's safe harbor for forward-looking statements. MTD 15 n.8, 18 n.10; Ex. 26 at 514-26; 15 U.S.C. § 78u-5(e) (in analyzing applicability of safe harbor, "the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant").

Plaintiffs also argue that Defendants ask the Court to consider these documents "to support their counternarrative to the well-plead allegations" and that the "facts for which these materials are cited are all subject to reasonable dispute." RJN Opp. 11-12. Not so. These materials—the contents of which Plaintiffs do *not* dispute—provide the necessary context in which to analyze the sufficiency of Plaintiffs' allegations. *See supra* 1-3. Each of these documents is judicially noticeable and offered for a proper purpose.

### III.   The Court Should Take Judicial Notice of Exhibits 11 and 19.

Plaintiffs do not and cannot challenge that Exhibit 11 (Nov. 29, 2022 Press Release) and Exhibit 19 (Mar. 11, 2024 Press Release) are judicially noticeable. RJN Opp. 6-7. Instead, Plaintiffs argue the Court should decline to consider Exhibits 11 and 19 because they allegedly are "not directly related to matters at issue in the motion to dismiss" because they were made outside of Plaintiffs' self-crafted class period. *Id*.

This argument fails. Whether a court should decline to consider judicially noticeable documents on relevance grounds is determined on a case-by-case basis; there is no brightline rule

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

that an otherwise judicially noticeable document should not be considered simply because it was disclosed outside the class period. *See, e.g., In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1150 n.2 (C.D. Cal. 2007) (taking judicial notice of SEC filings after the class period over plaintiff's objections); *In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *5 (N.D. Cal. June 28, 2005) (taking judicial notice of materials pre-dating the class period for purposes of evaluating scienter).[4] And this makes sense: public documents from before the class period are assumed to have been known to investors when the challenged statements were made and can provide important context for those statements, while post-class period materials can sometimes shed light on earlier knowledge or conduct.

Here, Exhibits 11 and 19 are clearly relevant to Plaintiffs' claims. The earliest challenged statement (in the Dec. 7, 2022 Letter to Shareholders) explicitly references the fact that the Company had already previously announced its decision to increase patient enrollment. AC ¶ 73 ("We also recently announced . . . that the company is opting to increase study side to 400"). Thus, that earlier public announcement constitutes important context that a reasonable investor is assumed to have known when considering subsequent statements. Moreover, the fact that the Company had previously made and announced its decision to increase enrollment *before* the first Site 145 Audit took place, before Defendants are alleged to have first learned of the concerns identified in that Audit, and before any challenged statement was made is relevant and important for evaluating Plaintiffs' allegations of falsity and scienter. MTD 4, 13. Plaintiffs' attempt to arbitrarily sever the Dec. 7, 2022 challenged statement from the pre-class period disclosure of the same information is

---

[4] Plaintiffs' authorities are not to the contrary. Many simply determined that particular post-class period documents were not relevant to the claims at issue in those cases. *See Belodoff v. Netlist, Inc.*, 2008 WL 2356699, at *4 (C.D. Cal. May 30, 2008) (no discussion of whether the materials were outside the class period); *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *10 (D.N.J. Dec. 27, 2019) (finding FDA guidance post-dating class period not relevant); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3 n.5 (D.N.J. Aug. 28, 2017) (concluding company's SEC filings "nearly a year after" the challenged statements had "low" relevance to the claims). One case concerned judicial notice of "court filings" in other cases and did not address the issue of materials outside the class period. *See Di Donato v. Insys Therapeutics Inc.*, 2017 WL 3268797, at *8 (D. Ariz. Aug. 1, 2017). Another simply decided not to take judicial notice of certain post-class period materials without any analysis of relevancy. *See In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *12 (N.D. Cal. Aug. 5, 2004). To the extent *Ferreira v. Funko Inc.*, 2021 WL 8820650, at *11 (C.D. Cal. Oct. 22, 2021) suggests post-class period materials are *per se* irrelevant, it is inconsistent with more persuasive authority in this circuit and the governing precedent discussed above.

6

emblematic of Plaintiffs' cherry-picking and should be rejected. Plaintiffs do not and cannot dispute that the Company decided to increase enrollment prior to the class period, therefore consideration of Exhibit 11 does not "encourage[] a weighing of factual disputes," but instead provides necessary context for Plaintiffs' allegations. RJN Opp. 7.

Similarly, Exhibit 19 (BioVie's Mar. 11, 2024 announcement that it plans to conduct a new Phase 3 study) is clearly relevant to the Court's scienter analysis: it suggests the Defendants' continued genuine belief in Bezisterim's efficacy and likelihood of clinical success and it is not offered to contradict any well-pleaded fact in the AC. *See* MTD 23.

**IV.    The Court Should Take Judicial Notice of Exhibits 4, 5, and 7.**

Plaintiffs object to consideration of Exhibit 4 (transcript of the Mar. 15, 2023 Oppenheimer Healthcare Conference), Exhibit 5 (transcript of the Sept. 26, 2023 Cantor Fitzgerald Global Healthcare Conference), and Exhibit 7 (transcript of BioVie's Sept. 7, 2023 Key Opinion Leader Webinar) because they are allegedly "facts outside the complaint" and "transcripts not part of the public record." RJN Opp. 8-9. Not so. Each of these documents is judicially noticeable, and "[m]aterials that are the subject of judicial notice . . . are not 'outside' the complaint and may be considered" on a motion to dismiss. *Benson*, 2022 WL 2334037, at \*2. The details of NM101's study design and protocol, and the fact that previous pre-clinical and clinical work (including Phase 2 data) had shown positive results from Bezisterim, provide important and necessary context for evaluating the challenged statements and assessing the Defendants' state of mind. *See* MTD 3-4 (citing Exs. 4, 5, and 7). Plaintiffs can argue about the most reasonable inferences to be drawn from these facts, but their existence is indisputably appropriate for judicial notice and, again, is not offered to contradict facts pled by Plaintiffs. RJN Opp. 8-9.

With regards to whether these transcripts are publicly available, Plaintiffs only state that they were not filed with the SEC and—without any explanation or elaboration—that such materials are not "readily accessible through other public sources." RJN Opp. 8. However, each of these transcripts is publicly available and whether they were filed with the SEC has no bearing on whether they are matters of public record. *See Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta*

*Platforms, Inc.*, 2024 WL 4251896, at *9 n.15 (N.D. Cal. Sept. 17, 2024) ("Transcripts of . . . investor presentations are publicly available documents and are thus matters of public record not subject to reasonable dispute.") (citation omitted). Indeed, courts in this Circuit regularly take judicial notice of transcripts of healthcare and other industry conferences in evaluating motions to dismiss in securities class actions. *See, e.g.*, *id.*; *Sneed v. AcelRx Pharms., Inc.*, 2022 WL 4544721, at *2 (N.D. Cal. Sept. 28, 2022) (taking judicial notice of transcript of Oppenheimer Health Care Conference); *Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at *4 (N.D. Cal. Mar. 18, 2024) (taking judicial notice of transcripts of Jefferies Healthcare conferences); *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*, 2021 WL 1056549, at *3 n.1 (N.D. Cal. Mar. 19, 2021) (taking judicial notice of transcripts of technology conferences); *see also* RJN 9.[5]

**V.    The Court Should Take Judicial Notice of Exhibits 9-10, 18, 20-21, and the Webpages Referred to in the RJN Opposition as "Exhibits 27-29."**

Plaintiffs object to consideration of this final set of materials primarily because they were "authored by third parties" and are thus somehow "not relevant" to the Court's analysis.[6] RJN Opp. 9-10. But these are publicly available materials not subject to reasonable dispute and are appropriate subjects of judicial notice under Federal Rule of Evidence 201; they also provide important industry context regarding clinical trials generally, and Alzheimer's trials in particular, that a reasonable investor is assumed to have known when viewing the challenged statements. Under *Omnicare* and *Tellabs*, courts must consider this critical context when evaluating the challenged statements and the competing inferences with respect to scienter. *See Omnicare*, 575 U.S. at 190 (falsity "always depends on context" and requires courts to consider "the customs and practices of the relevant industry," among other things); *Tellabs*, 551 U.S. at 322; *supra* 1-3; RJN 1-2; *see also AECOM v. Zurich Am. Ins. Co.*, 2021 WL 6425546, at *5 (C.D. Cal. Dec. 1, 2021) (taking judicial notice of medical journals), *aff'd*, 2023 WL 1281675 (9th Cir. Jan. 31, 2023); *Pardi v. Tricida, Inc.*, 2024

---

[5] To the extent the courts in *In re MGM Mirage Sec. Litig.*, 2013 WL 5435832 (D. Nev. Sept. 26, 2013) and *Belodoff*, 2008 WL 2356699, held otherwise, those decisions are outliers countered by the weight of authority in this circuit. RJN Opp. 8. Further, the court in *Belodoff* did take judicial notice of the conference call transcript because, as here, plaintiff did not dispute its accuracy. *Belodoff*, 2008 WL 2356699, at *4.

[6] As discussed above, that some of these materials were published outside the class period is not dispositive as to whether they are judicially noticeable or relevant. *See supra* 5-7; RJN Opp. 9-10.

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY
SUITE 1100
LAS VEGAS, NEVADA 89169

WL 1056013, at *4 (N.D. Cal. Mar. 11, 2024) (taking judicial notice of four articles in *The Lancet*).[7]

Exhibits 9 and 10, both articles from well-renowned medical journals focused on Alzheimer's research and development, explain that the attrition rates in clinical trials for Alzheimer's disease typically range from 17.4% to 29%. *See* MTD 4 n.3 (citing Exs. 9-10). This undisputed industry context reflects that it is common and expected that a sizable portion of enrolled patients will end up being excluded from or not finishing a clinical trial; that trial designs and statistical analysis plans account for this (e.g., expected 20% attrition); and that exclusions or drop outs below that expected threshold are routine and do not threaten a trial's results. This provides important context for evaluating Plaintiffs' falsity allegations, and supports a good-faith inference as to Defendants' mental state regarding any data-integrity concerns allegedly raised in the Site 145 Audits. *See* MTD 4, 12-15, 21.

Exhibit 18 (*Clinical Investigations* article) likewise provides industry context for Mr. Do's and Pentara CEO Hendrix's sentiments that the scale of the fraud apparently perpetrated by non-parties at 15 of NM101's clinical sites was unprecedented and anomalous. *See* MTD 8 n.5. This context is relevant and necessary to evaluating Plaintiffs' claims that the Site 145 Audits would have undercut any challenged statements. *See Omnicare*, 575 U.S. at 190. It is also relevant in weighing the competing inferences regarding Defendants' expectations and beliefs about the improbability that any potential fraud at NM101's clinical sites could be so widespread as to threaten the statistical significance of the trial.

Similarly, to properly evaluate whether the challenged statements regarding patient "enrollment" were false or misleading, the Court must understand what "enrollment" means in the context of clinical trials, including the fact that "enrolled" patients may later (or inevitably) be deemed ineligible to participate in the study. *See* MTD 11-12. Defendants have provided the Court with articles from two well-established medical journals (Exhibits 20-21) and two U.S. Government

[7] Plaintiffs' reliance on *Belodoff*, 2008 WL 2356699, at *4 is misplaced. There, the court declined to take judicial notice of third-party analysts' financial projections because they reflected "the authors' own views and opinions." *Id.* Here, on the other hand, Exhibits 9-10 and 18 are cited for historical data and analysis (not the authors' subjective views or opinions), which reflect historical industry metrics and standards that provide important context for the challenged statements.

9

websites (what the RJN Opp. refers to as Exhibits 27-28) that provide that context, all of which are proper subjects of judicial notice. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (taking judicial notice of a medical journal's definition of chronic fatigue syndrome); *Woods v. Berryhill*, 2019 WL 4734680, at *3 (D. Nev. Sept. 28, 2019) (taking judicial notice of commonly understood meanings of the medical terms as described in Mayo Clinic publications); *Dresner v. Silverback Therapeutics, Inc.*, 2023 WL 2913755, at *4 (W.D. Wash. Apr. 12, 2023) (taking judicial notice of the National Cancer Institute's definition of "open-label study . . .  for the purpose of understanding what is generally understood by 'open-label' and best clinical practices," even though "the parties' understanding of what an open-label study is in dispute");[8] *Weinstein v. Kirkman*, 2013 WL 12121125, at *1 n.2 (W.D. Wash. Sept. 16, 2013) (taking judicial notice of information on clinicaltrials.gov); *see also In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1186 n.4 (9th Cir. 2024) (taking judicial notice of information on government website).

Finally, the fact that Mr. Do left retirement to lead BioVie and expressed his confidence in Bezisterim's potential (as reflected on the webpage Plaintiffs refer to as "Exhibit 29") is not disputed. *See* MTD 20 n.12. Plaintiffs can argue about the most reasonable inferences to be drawn from these facts, but their existence is appropriate for judicial notice.[9]

These Exhibits, like all the other materials offered in connection with the RJN, provide important and necessary context for properly evaluating the challenged statements and weighing competing inferences of scienter under *Omnicare* and *Tellabs*.

---

[8] Respectfully, to the extent the decision in *Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *5 (D. Nev. Oct. 7, 2024) is to the contrary, it was incorrectly decided. RJN Opp. 10. Whether or not a particular source's definition of a scientific term is "considered exhaustive by the industry" has no bearing on whether that definition provides appropriate context for how the term would have been understood by a reasonable investor for purposes of evaluating falsity on a motion to dismiss.

[9] Plaintiffs' reliance on *In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147, 1153 (N.D. Cal. 2023), is misplaced. There, the court found the article at issue only provided "general and irrelevant character evidence" about the CEO, likely because the article had nothing to do with the specific allegations in the complaint. Here, by contrast, "Exhibit 29" reflects that Mr. Do came out of retirement to lead BioVie in connection with the development of Bezisterim, the very drug at issue in this case.

10

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court consider and/or take judicial notice of all the documents attached as Exhibits to the York-Erwin Declaration via Appendix volumes I through III and/or referenced above when deciding the Defendants' Motion to Dismiss the Amended Complaint.

DATED this 5th day of December, 2024.

**BAKER & HOSTETLER LLP**

BY: _/s/ Genevieve G. York-Erwin_

Douglas W. Greene, Esq. (admitted *pro hac vice*)
Genevieve G. York-Erwin, Esq. (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
Telephone:    206.212.589.4200
Email:  dgreene@bakerlaw.com
        gyorkerwin@bakerlaw.com

**SNELL & WILMER, LLP**

Patrick G. Byrne, Esq.
Bradley T. Austin, Esq.
3883 Howard Hughes Parkway, Ste. 1100
Las Vegas, NV  89169
Telephone:    702.784.5200
Facsimile:    702.784.5252
Email: pbyrne@swlaw.com
        baustin@swlaw.com

*Attorneys for Defendants*
*BIOVIE INC., CUONG DO, and JOSEPH PALUMBO*

11

**CERTIFICATE OF SERVICE**

On December 5, 2024, I served the foregoing document on all parties appearing in this case when filing said document through the court's PACER system with automatic e-service on all persons who have registered for e-service on PACER for this case.

*s/ Cheryl Phillips*

An employee of BAKER & HOSTETLER LLP