**ALDRICH LAW FIRM, LTD.**
John P. Aldrich, Esq.
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel: (702) 853-5490
Fax: (702) 227-1975
Email: jaldrich@johnaldrichlawfirm.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Lead Plaintiff
and Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE BIOVIE INC. SECURITIES LITIGATION | Case No. 3:24-cv-00035-MMD-CSD |
| | **PLAINTIFFS' MOTION TO STRIKE CONFIDENTIALITY DESIGNATION** |

Lead Plaintiff Anthony Rinaldi and additional named plaintiff Mark Hill (collectively, "Plaintiffs"), pursuant to Section 6 of the Stipulated Protective Order (ECF No. 63), respectfully move the Court for an Order striking Defendants' "Confidential" designation from the documents listed in Exhibit 1 attached to the accompanying Declaration of Adam M. Apton ("Apton Decl."). Copies of the documents (except for spreadsheets) attached as Exhibit 2 to the Apton Decl.

This motion is based on the following Memorandum of Points and Authorities, the Apton Decl. and the exhibits attached thereto, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

Plaintiffs met and conferred with Defendants concerning the relief requested herein. Plaintiffs certify they have complied with the meet-and-confer requirements set forth in Paragraph 6.2 of the Stipulated Protective Order. *See* Apton Decl. at ¶¶3, 7.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

Defendants have produced approximately 3,500 documents to date—all of which have been marked "Confidential" under the Stipulated Protective Order (ECF No. 63). Of these 3,500 documents, Plaintiffs have identified 64 that are especially relevant to their pending claims of securities fraud against Defendants. These documents show in no uncertain terms that Defendants knew the NM101 trial was rife with study protocol violations. Plaintiffs need these documents de-classified to prepare their case unencumbered by the restrictions currently in place pursuant to the Stipulated Protective Order.

Plaintiffs met-and-conferred with Defendants on this issue, identified the documents they seek to de-designate, and explained why the current "Confidential" designations are improper. Defendants oppose Plaintiffs' challenge but provide no legitimate legal basis for maintaining their "Confidential" classifications. The documents discuss protocol violations dating back to 2021 and 2022 that occurred during a clinical trial that no longer exists. Nothing of any proprietary value or commercial sensitivity is discussed in the documents. The only relevance these documents possess is in the context of the present lawsuit. No harm will result from de-designating these documents. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

In sum, the documents at issue should never have been marked "Confidential" to begin with and they certainly do not qualify for "Confidential" treatment now.

**II.  THE STIPULATED PROTECTIVE ORDER**

On July 10, 2025, the Court entered the Stipulated Protective Order. ECF No. 63. The Stipulated Protective Order allows the parties to mark documents "Confidential." Once marked "Confidential," a party must adhere to restrictions concerning how, when, and under what circumstances a document can be used. For example, documents marked "Confidential" must be filed under seal. *Id*. at ¶7.1. In addition, while a party receiving "Confidential" information can use that information for the litigation, they are limited in terms of how that information can be shared

and with whom it can be shared. The Stipulated Protective Order states that "any person receiving Protected Material pursuant to this Stipulated Protective Order shall not reveal or discuss such information to or with any person not entitled to receive such information under the terms hereof." *Id*. at ¶8.1. Who is entitled to receive information and who is *not* entitled to receive information is further described as including "Outside Counsel of Record," "Experts," the "Court and its personnel," "witnesses who Counsel in good faith believes may be called to testify," and "other person[s] with the written consent of the Designating Party." *Id*. at ¶8.2. The restrictions on use also extend to non-party documents. *See id*. at ¶10.

Importantly, the Stipulated Protective order states at the outset that "The Parties acknowledge that this Stipulated Protective Order *does not confer blanket protections* on all disclosures or responses to discovery and that the protection it affords from public disclosure and *use extends only to the limited information or items that are entitled to confidential treatment* under the applicable legal principles." *Id*. at ¶1 (emphasis added).

**III.    LEGAL STANDARD**

Defendants want to maintain confidentiality of documents they designated as "Confidential" under the Stipulated Protective Order. Therefore, Defendants bear the burden to "establish[] that there is good cause to continue the protection of the discovery material." *In re Roman Catholic Archbishop*, 661 F.3d at 424; Stipulated Protective Order at ¶6.3.

Courts within the Ninth Circuit utilize a "two-step framework" when evaluating confidentiality designations. *See Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*, No. 21-CV-05246-MMC (DMR), 2024 WL 4682307, at *3 (N.D. Cal. Nov. 4, 2024) (citing *In re Roman Catholic Archbishop*, 661 F.3d at 424). The first step requires Defendants to "identify the specific prejudice or harm that will result from disclosure for each particular document it seeks to protect. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Rather, the person seeking protection from disclosure must allege specific prejudice or harm." *Id*. at *4 (quotation marks and citations omitted).

"Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance 'the public and private interests to decide whether

[maintaining] a protective order is necessary.'" *In re Roman Catholic Archbishop*, 661 F.3d at 424 (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)). When doing this, the Ninth Circuit directs courts to consider the factors identified in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995), which are: "(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Id*.

## IV.    ARGUMENT

### A.    The Documents Do Not Qualify for "Confidential" Treatment.

Plaintiffs challenge the "Confidential" designations of 64 documents produced by Defendants in discovery. These 64 documents were marked "Confidential" along with every other document produced by Defendants, even though the Stipulated Protective Order prohibits mass and indiscriminate designations. *See* Stipulated Protective Order at ¶1 ("this Stipulated Protective Order *does not confer blanket protections* on all disclosures or responses to discovery and that the protection it affords from public disclosure and *use extends only to the limited information or items that are entitled to confidential treatment* under the applicable legal principles") (emphasis added). *See also Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2019 WL 1552293, at *1 (N.D. Cal. Apr. 9, 2019) (rejecting "wholesale designations of deposition transcripts" as "Confidential" because protective order required "restraint and care" when making designations). As described below, none of the 64 documents qualifies for "Confidential" treatment.[1]

### 1.    Protocol Deviation Reports and Audit Reports.

This category of documents consists largely of "Protocol Deviation Reports," which are spreadsheets identifying "major" violations of the NM101 study's trial protocol. For each

---

[1] The documents at issue are grouped into two categories: (1) Protocol Deviation Reports and Audit Reports ("Reports" or "Rep."); and (2) Correspondence about Site and Study Observations ("Correspondence" or "Corr."). Exhibit 1 attached to the Apton Decl. identifies the category for each challenged document.

violation, the spreadsheet identifies the site where the violation was observed, the date of the violation, a description of the violation, and details the "classification" of the description (*e.g.*, "major"). Importantly, the spreadsheets do *not* contain any personal identifying information, such as names or dates of birth; instead, the spreadsheets only list "Subject ID" numbers (*e.g.*, 127-0011).

The Pitts and GeoSera Audit reports are also included in this category. The Court referred to these materials as the "Pitts Audit" and the "GeoSera Audit" in its order denying Defendants' motion to dismiss. Similar to the "Protocol Deviation Reports," these materials do not identify any personal identifying information about the NM101 study's patients. They discuss only observations about study protocol violations and evidence of patient fraud at various study sites in the NM101 trial.

These materials along with the other "Reports" in this category do *not* contain anything qualifying for "Confidential" treatment under the Stipulated Protective Order. They do not have any trade secrets, patents, or other commercial information. They do not discuss any proprietary information. They do not discuss any commercialization strategies. Instead, they contain only observations made by certain individuals over three years ago while auditing a clinical trial that is no longer in existence.

### 2. Correspondence about Site and Study Observations.

The "Correspondence" materials communicate the same information as the "Reports" but just in less formal means. For example, the "Correspondence" describes protocol violations in bullet point and/or paragraph forms instead of formal "audit" reports. Again though, the materials do *not* contain anything qualifying for "Confidential" treatment under the Stipulated Protective Order. There are no trade secrets, patents, or commercial information. There is no discussion of proprietary information and the materials do not disclose any commercialization strategies. The "Correspondence" contains observations about conditions existing in an old clinical trial from over three years ago.

**B.    Defendants Will Not Suffer "Specific Prejudice or Harm" from the Documents.**

To maintain "Confidential" treatment, Defendants must do more than simply argue the documents fall within the scope of the Stipulated Protective Order. "This argument, although logical, conflicts with Ninth Circuit precedent. As noted, where a confidentiality designation is predicated upon a stipulated protective order, the party seeking to uphold the designation bears the burden of demonstrating that particularized harm will result from disclosure. The producing party's good-faith reliance on the stipulation is insufficient to carry that burden." *Campos v. Arizona Bd. of Regents*, No. CV-24-00987-PHX-JJT, 2024 WL 5187690, at *4 (D. Ariz. Dec. 20, 2024) (citing *In re Roman Catholic Archbishop*, 661 F.3d at 424); *accord Est. of Serna v. Cnty. of San Diego*, No. 20-CV-2096-BAS-DDL, 2024 WL 3564460, at *2 (S.D. Cal. May 13, 2024) ("making a blanket good cause finding would be both inconsistent with the protective order's provision for challenging confidentiality designations"). Absent "any supporting declarations addressing the specific prejudice or harm that will result from disclosure" of each document, Defendants have not and cannot carry this burden. *Athletics Inv. Grp., LLC*, 2024 WL 4682307, at *4 (rejecting confidentiality designation where party argued "broadly" that confidential treatment was necessary to protect "decision-making process").

Notably, the Ninth Circuit made clear that "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mutual Automobile Insurance Company*, 331 F.3d 1122, 1130-31 (9th Cir. 2003). To satisfy the "good cause" showing under Rule 26(c), the party seeking protection must make "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Id*. Here, as in *Foltz*, Defendants must make "an actual showing of good cause for their continuing protection under Federal Rule of Civil Procedure 26(c)." *Id*. at 1131. Defendants cannot carry this burden.

During the meet-and-confer process required for this challenge (*see* Stipulated Protective Order at ¶6.2), Defendants articulated no persuasive basis for maintaining the "Confidential"

6

designations for these documents. At most, they argued that some of the information originated with non-parties and pursuant to various agreements with those non-parties, the information was subject to confidentiality. *See* Apton Decl. at ¶7 & Exhibit 4. That is not a justification for maintaining the "Confidential" designation under the law. It does not describe any particularized prejudice or harm that would result from de-designating the documents *en masse* or even any one single document. *See Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2024 WL 735657, at \*2 (N.D. Cal. Feb. 22, 2024) ("Government did not file any supporting declarations by law enforcement or national security personnel 'explaining why the release of the challenged material would harm law enforcement or national security interests, or to give document-by-document reasons for affording these documents protection.'"); *Orgain, Inc. v. N. Innovations Holding Corp.*, No. 8:18-01253 JLS (ADS), 2021 WL 9928662, at \*2 (C.D. Cal. Aug. 30, 2021) (rejecting "confidential" designation because "embarrassment" did not constitute good cause or particularized harm).

Case law from within this District supports Plaintiffs' position on this point. In *Playup, Inc. v. Mintas*, No. 2:21-cv-02129-GMN-NJK, 2024 U.S. Dist. LEXIS 176110 (D. Nev. Sep. 26, 2024), Defendants attempted to maintain "confidential" designations for 20 documents of which 19 belonged to a non-party. The court denied Defendants' motion with respect to the non-party documents. In pertinent part, the court held that Defendants "provided no factual showing that good cause exists for sealing. Instead, the sole basis for the sealing request is that non-party FTX designated the information as confidential pursuant to the stipulated protective order, but that designation does not (standing alone) create a basis for sealing once the document is filed with the Court." *Id*. at \*5.

Similarly, in *Bridge v. Credit One Financial*, No. 2:14-cv-01512-LDG-NJK, 2015 U.S. Dist. LEXIS 42084 (D. Nev. Mar. 31, 2015), the Court refused to allow the defendants to file a document under seal simply because it "contain[ed] proprietary and other confidential business information of Defendant and non-parties." In pertinent part, the court held "there has been no showing, and the Court has not found, that any specific documents are secret or confidential. Defendant has not provided specific facts supported by declarations or concrete examples to

establish that a protective order is required to protect any specific trade secret or other confidential information pursuant to Rule 26(c) or that disclosure would cause an identifiable and significant harm." *Id*. at *2-3.

And in *Barnum v. Equifax Info. Servs., LLC*, No. 2:16-cv-02866-RFB-NJK, 2018 U.S. Dist. LEXIS 121032 (D. Nev. July 19, 2018), the court refused to seal a non-party's document even though the non-party submitted a declaration stating that the document at issue "contain[ed] proprietary information, the revelation of which would be competitively harmful." *Id*. at *3-4. Like these cases, Defendants fail to articulate any specific reason or particularized harm that would result from the de-designation of the documents at issue. The mere fact that some of the documents refer to third-parties does not come remotely close to a reason capable of justifying the "Confidential" designations being challenged.

### C.     Public Interests Outweigh Defendants' Private Concerns.

Even if Defendants could articulate a "particularized" harm, the *Glenmede* factors weigh in favor of granting Plaintiffs' motion. *See Glenmede Trust Co.*, 56 F.3d at 483. <u>First</u>, Defendants argue vaguely that de-designating certain documents would undermine the interests of other unnamed third-parties that, by some contract or agreement, requires the materials to remain confidential. Absent a declaration from the individual or entity to which that privacy interest belongs, there is no proof to support Defendants' claim let alone any explanation as to how de-designating the documents would undermine the supposed privacy interest that exists. Such hypothetical reasoning and conjecture on the part of Defendants is unavailing. *See Pinto v. Pac. Creditors Ass'n*, 605 F.3d at 665, 678-79 (9h Cir. 2010).

Furthermore, the information contained in the documents is years old at this point and well past "stale," meaning that any commercial value that existed has long since "dissipated." *See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, No. 1:11-cv-09490 (ALC), 2016 U.S. Dist. LEXIS 96766, at *15-16 (S.D.N.Y. July 21, 2016) (rejecting "confidential" designations where "five years" had elapsed since documents were created). *See also Dawson v. Merck & Co.*, No. 112CV1876BMCPK, 2021 WL 242148, at *8 (E.D.N.Y. Jan. 24, 2021) ("Stale business records

8

cannot support the necessary finding of harm, and therefore "cannot overcome the public's strong interest in disclosure.") (collecting cases).

Second, Plaintiffs move to de-designate the documents at issue for legitimate purposes, that is to be able to use the documents freely in discovery and preparing for summary judgment and trial. Presently, the Stipulated Protective Order restricts who can and who cannot receive "Confidential" documents. It also requires unnecessarily Plaintiffs to file documents under seal when no legitimate justification for that drastic action exists.

Third, de-designating these documents may lead to their public disclosure at some point in the future. In turn, Defendants may face embarrassment when interested parties receive information that blatantly contradicts past public statements. But that sort of embarrassment is not sufficient to maintain the "Confidential" designations being challenged. *See Orgain, Inc.*, 2021 WL 9928662, at *2. *See also Kamankana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."). "General allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of privileged documents is insufficient to justify judicial endorsement of an umbrella confidentiality agreement." *Glenmede Trust Co.*, 56 F.3d at 484; *Vassiliades v. Israely*, 714 F. Supp. 604, 605 (D. Conn. 1989) ("[a]dverse publicity stemming from public reaction to the facts giving rise to liability does not qualify as good cause, even where the parties stipulate to the entry of a protective order").

Fourth, the information at hand does not bear on public health or safety. To the contrary, the NM101 study is years old at this point. The information contained in the documents is stale and does not bear on any current events or operations.

Fifth, de-designating the information in the documents will promote fairness and efficiency. The Stipulated Protective Order states that the producing party is not hampered by the restrictions applicable to "Confidential" information. *See* Stipulated Protective Order at ¶8.1 ("Notwithstanding the foregoing, nothing in this Order shall be deemed to limit or prohibit disclosure or use of any Protected Material by the Producing Party."). Meanwhile, Plaintiffs (as

the "Receiving Party") must adhere to strict rules concerning who can and who cannot receive "Confidential" information and when that information can or cannot be shared depending on the circumstances.

Sixth, none of the parties is a public entity or official. This factor is not applicable.

Seventh, this case and the de-designation of these documents does, in fact, relate to issues important to the public. Those issues are the quality, reliability, and integrity of clinical trials conducted under the supervision of the Food & Drug Administration. As alleged, companies who wish to sell drugs to the public must obtain permission from the FDA before doing so. That permission is contingent upon a finding that the drug being marketed will do more good than harm to the general public, *i.e.*, that the drug possesses a "clinical benefit." Clinical trials are the means by which a drug company demonstrates that finding. Absent some assurance that clinical trials are conducted with integrity, there is no safeguard in place and the public is ultimately at risk. De-designating the documents at issue helps ensure that integrity while keeping the documents buried would only encourage guilty parties to hide the misconduct they committed.

[*Continued on following page*]

## V.     CONCLUSION

Ninth Circuit precedent requires more than just the mere existence of the Stipulated Protective Order. Defendants need to demonstrate a "particularized harm" that will result from the de-designation. They fail in this regard and, as such, Plaintiffs' motion should be granted in its entirety. *See Orthopaedic Hosp. v. DJO Glob., Inc.*, No. 3:19-CV-00970-JLS-AHG, 2020 WL 7625124, at \*2 (S.D. Cal. Dec. 22, 2020) (rejecting confidential designation where "Defendants made no effort to argue that good cause exists other than to note that the documents were designated as highly confidential under the stipulated protective order"); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA (MDD), 2020 WL 1911502, at \*8 (S.D. Cal. Apr. 20, 2020) ("An agreement to treat information designated by a third party as confidential under a protective order is insufficient to justify sealing the information.").

Dated: February 27, 2026          Respectfully submitted,

**ALDRICH LAW FIRM, LTD.**

/s/ *John P. Aldrich*
John P. Aldrich, Esq.
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel: (702) 853-5490
Fax: (702) 227-1975
Email: jaldrich@johnaldrichlawfirm.com

*Liaison Counsel for Lead Plaintiff*
*and Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff*
*and Lead Counsel for the Class*