Patrick G. Byrne (Nevada Bar #7636)
Bradley T. Austin, Esq. (Nevada Bar #13064)
SNELL & WILMER L.L.P.
1700 S Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Tel. 702.784.5200
Fax. 702.784.5252
Email: pbyrne@swlaw.com
        baustin@swlaw.com

Douglas W. Greene (admitted *pro hac vice*)
Genevieve G. York-Erwin (admitted *pro hac vice*)
Marissa A. Peirsol (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Email: dgreene@bakerlaw.com
        gyorkerwin@bakerlaw.com
        mpeirsol@bakerlaw.com

*Attorneys for Defendants BioVie Inc.,
Cuong Do, and Joseph Palumbo*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE BIOVIE INC. SECURITIES LITIGATION | Case No.: 3:24-cv-00035-MMD-CSD |
| | **DEFENDANTS BIOVIE INC., CUONG DO, AND JOSEPH PALUMBO'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE CONFIDENTIALITY DESIGNATIONS (ECF NO. 73)** |

**I.      INTRODUCTION**

This case is a putative securities class action related to BioVie Inc.'s ("BioVie") Phase 3 NM101 clinical trial ("NM101"), which evaluated BioVie's lead drug candidate, bezisterim, for the treatment of Alzheimer's Disease. Plaintiffs have brought claims against BioVie, its CEO, Cuong Do, and its Chief Medical Officer, Joseph Palumbo (together, "Defendants"), alleging that Defendants violated Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 by making allegedly false and misleading statements related to NM101.

Plaintiffs have moved to de-designate 64 documents that BioVie produced in discovery and

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

designated as "Confidential" under the parties' Stipulated Protective Order. Contrary to Plaintiffs' unsupported assertions, the 64 documents Plaintiffs seek to de-designate do not show that Defendants knew NM101 was "rife with protocol violations," nor is it true that "no harm will result from de-designating these documents." (ECF No. 73, p. 2.) To the contrary, the documents contain sensitive and proprietary information, including clinical trial data, standard operating procedures, clinical study methodology, and preliminary audit findings, that would cause great competitive harm if publicly disclosed. For these reasons, BioVie provided Plaintiffs with its basis for maintaining the "Confidential" designations during the parties' meet and confer and followed up with a list of documents that could be de-designated subject to limited redactions. Plaintiffs still filed the instant motion, seeking the wholesale de-designation of all 64 documents and claiming, without support, that the documents have no "proprietary value or commercial sensitivity." (ECF No. 73, p. 2.)

Under Ninth Circuit law, a more tailored approach is proper and necessary to protect legitimately confidential information. Defendants therefore propose the following three-pronged approach, pursuant to which some documents will remain designated confidential in their entirety; others will be partially de-designated subject to Defendants' proposed redactions; and others will be de-designated in their entirety:

- **Documents That Should Remain Confidential.** As detailed below, BioVie and third parties would suffer commercial harm if the following documents were publicly disclosed, and the public-private factors justify their continued confidential treatment: A draft of BioVie's Statistical Analysis Plan; the Protocol Deviation Plan for NM101 ("Protocol Deviation Plan") and deviation reports reflecting the same ("Deviation Reports"); a letter BioVie sent to the FDA regarding suspected misconduct at certain clinical sites ("FDA Letter"); and preliminary audit findings and notes from Pitts Quality Consulting ("Pitts Audit Reports") and GeoSera ("GeoSera Audit Reports").

- **Documents That Can Be De-Designated and Redacted.** Several of the documents Plaintiffs seek to de-designate include personally identifying information and clinical study site and subject identifiers, which would cause reputational and regulatory harm if publicly

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

disclosed. Accordingly, BioVie proposes limited redactions to these documents in order to protect this sensitive third-party information while promoting the disclosure of non-protected content.

- **<u>Documents That Can Be De-Designated</u>**. After conferring with certain third parties about potentially confidential information contained in certain documents, BioVie agrees to de-designate documents that no longer warrant ongoing protection from public disclosure.

BioVie respectfully requests that the Court adopt this three-pronged approach and deny Plaintiffs' motion as to the "Confidential" documents and information detailed below.

## II.    RELEVANT BACKGROUND

BioVie produced competitively sensitive documents in discovery and marked those documents as "Confidential" under the parties' Stipulated Protective Order (ECF No. 63.). On February 6, 2026, Plaintiffs' counsel sent Defendants' counsel a letter challenging Defendants' confidentiality designations for 64 documents produced in this litigation. Pursuant to the Stipulated Protective Order, on February 24, 2026, the parties conferred regarding the confidentiality designations at issue. Defendants agreed to propose redactions for many of the documents. (ECF No. 73-5.) Despite this, Plaintiffs moved the Court to strike the confidentiality designations for 64 documents produced by Defendants and other non-parties. (ECF No. 73.)

## III.    LEGAL STANDARD

When a party seeks to publicly disclose materials that are designated as confidential pursuant to a stipulated protective order and attached to a non-dispositive motion, such as a motion to strike, the "good cause" standard under Rule 26(c) governs.[1] *See Campos v. Arizona Bd. of Regents*, 2024 WL 5187690, at *3 (D. Ariz. Dec. 20, 2024). To show that good cause exists, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no

[1]Accordingly, the "good cause" standard applies to the instant motion. To the extent the "compelling reasons" standard applies to documents attached to dispositive or merits-related motions, Defendants have satisfied that standard here as well, and also in other filings supporting continued confidential treatment of documents attached to those filings. (ECF Nos. 74, 78, 79); *see also Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (holding the "compelling reasons" standard applies when the discovery materials designated as confidential are attached to a dispositive motion).

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

protective order is granted." *Id.* at *2 (citations omitted). If prejudice and harm result from public disclosure, the court must balance public and private interests to decide whether the documents should remain confidential. *Id.* The Ninth Circuit has adopted a set of factors for courts to consider in balancing public and private interests, which include: (1) whether disclosure will violate privacy interests, (2) whether the information is being sought for a legitimate or improper purpose, (3) whether disclosure will cause a party embarrassment, (4) whether confidentiality is being sought over important public health and safety information, (5) whether sharing information among litigants will promote fairness and efficiency, (6) whether a party benefiting from the confidentiality order is a public entity or official, and (7) whether the case involves important issues to the public. *Id.; Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3rd Cir. 1995).

## IV.    ARGUMENT

As an initial matter, Plaintiffs' claim that the "Confidential" designation on these documents inhibits them from using the documents "freely in discovery" is a red herring. (ECF No. 73, p. 9.) Any individual who needs to view the documents in discovery can simply sign Exhibit A to the Stipulated Protective Order. (ECF No. 63, p. 15.) Regardless, the other factors also weigh in Defendants' favor, as detailed below.

### A.    Documents That Should Remain Confidential

***Statistical Analysis Plan, BioVie00005146.*** The Statistical Analysis Plan ("SAP") is an operational document that includes descriptions of statistical strategies, scientific analyses, and overall clinical study design that reflect BioVie's methodological framework and proprietary methods. Exhibit 1, Morse Decl. ¶ 2. Further, BioVie extended extensive time and resources engaging with the FDA to reach a consensus regarding the study design and analyses that would be used by the FDA for regulatory decision-making. *Id.* The SAP also identifies how BioVie prioritizes certain clinical measures and discloses its analytical processes, which again BioVie has invested substantial time and resources to develop. *Id.* at ¶ 3. And disclosure of the SAP to competitors working in the same therapeutic area would give them a substantial advantage, potentially saving a year or more in development time and associated costs. *Id.* at ¶ 5. While NM101 has concluded, BioVie is still actively developing bezisterim and continues to use and adapt these

methodological approaches for its ongoing trials, and will do the same for future clinical trials. *Id*. at ¶ 4. Accordingly, the SAP is not "stale," as Plaintiffs baldly assert, but rather is full of proprietary information that can be used by BioVie's competitors to expedite the development process and study design for competing drugs at BioVie's expense. *Compare* ECF No. 73, p. 8, *with* Morse Decl. ¶ 5; *See Foran v. Ulthera, Inc.*, 2020 WL 3047789, at *2 (E.D. Cal. June 7, 2020) (sealing document that included "information about the structure, execution, results, and analysis of clinical trials").

The public and private interest factors also favor treating the SAP as confidential. As an initial matter, the version of the SAP that Plaintiffs seek to de-designate is in draft form and thus contains preliminary scientific reasoning and statistical models not intended for external reliance and of no importance to the public. Morse Decl. ¶ 6. Furthermore, a statistical analysis plan, like the SAP at issue here, is a technical document intended for use by regulatory authorities, in part because these documents contain complex principles that could be misinterpreted by the general public, a risk that is heightened by the disclosure of a draft document that includes analytical approaches that were not ultimately used or otherwise approved. *Id*. at ¶ 7. For these reasons, the SAP is a confidential document that should remain protected from public disclosure.

***Protocol Deviation Plan, BioVie00008218, and Deviation Reports.***[2] The Protocol Deviation Plan is an operational document developed by Cognitive Research Corporation ("CRC"), the contract research organization that provided trial-related services for NM101, in consultation with BioVie, and sets forth standard operating procedures, including proprietary strategies and metrics for executing and reporting in a clinical trial. Exhibit 2, Pitts Decl. ¶ 2; *Izzo v. Wal-Mart Stores, Inc*., 2016 U.S. Dist. LEXIS 48977, at *2-3 (D. Nev. Apr. 12, 2016) (protecting a party's "policies and operating procedures and standard forms that constitute [its] proprietary, sensitive company data"). The Protocol Deviation Plan, which essentially serves as an extension of the trial protocol, outlines internal and repeatable quality-management processes and operating procedures

---

[2] This category of documents refers specifically to the documents Bates labeled: BioVie00001600, BioVie00001602, BioVie00001675, BioVie00001687, BioVie00001708, BioVie00002133, BioVie00002141, BioVie00002342, BioVie00002423, BioVie00002660, BioVie00002679, BioVie00003674, BioVie00004520, BioVie00004711, BioVie00005143, BioVie00008153, BioVie00008613, and BioVie00011229.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

that can be used in ongoing and future studies with similar risk-based approaches. Pitts Decl. ¶ 3. Public disclosure of this information will result in commercial harm to BioVie and CRC because their competitors can use it to benchmark their processes and structure competing studies. Morse Decl. ¶ 9. Further, maintaining the confidentiality of internal quality systems encourages continued development of high-quality monitoring and risk-assessment processes designed to ensure patient safety and data quality. And, like the SAP, the Protocol Deviation Plan is a technical document intended for use by study personnel and regulators, and is of limited interest or importance to the general public. *Id*. at ¶ 8. Accordingly, the facts support protecting the Protocol Deviation Plan from public disclosure.

Similarly, the Deviation Reports should also be protected from public disclosure given that they include compilations of trial-related queries that reflect the strategies and metrics outlined in the Protocol Deviation Plan and reveal proprietary scientific and operational methodologies. *Id*. at ¶ 10. For example, the Deviation Reports describe how certain clinical sites departed from the trial protocol, note inconsistencies in data between source materials and databases used for analyses, and rank the deviations according to CRC's and BioVie's internal quality-management framework, thereby inherently disclosing aspects of the Protocol Deviation Plan, including the criteria used for classifying deviations. *Id*. at ¶ 11. Public disclosure of this information would provide BioVie's competitors with strategic information they otherwise would not have, and which they could use to BioVie's detriment, and thus would cause commercial harm to BioVie. *Id*. at ¶ 12; *see also Pardi v. Tricida, Inc.*, 2024 WL 4353547, at *1 (N.D. Cal. Sept. 30, 2024) (protecting clinical trial data from public disclosure because would cause competitive harm). Additionally, the Deviation Reports contain clinical trial data related to the execution and results of NM101, along with subject ID numbers and additional sensitive health information specific to subjects in the study. Morse Decl. ¶ 13. Disclosure of this information would compromise privacy safeguards, especially because subject ID numbers linked to descriptions of medical conditions and trial-related events, taken together, can risk subject identification. *Id*. at ¶ 14; *see also Edwards Lifesciences Corp. v. Meril Life Sciences Pvt. Ltd.*, 2023 WL 2743583, at *2 (N.D. Cal. Mar. 31, 2023) (sealing documents containing clinical trial data and other medical or personal information). Public

disclosure of information that could be used to identify subjects, even after a trial concludes, conflicts with confidentiality assurances contained in the trial participant consent forms; maintaining the confidentiality is important in order to preserve the integrity of research systems and encourage enrollment in future studies. Similarly, the Deviation Reports also include specific site numbers that can be tied back to a particular institution or investigator through publicly available materials, trial registry information, or other documents produced and publicly filed in this case. Morse Decl. ¶ 15.

*FDA Letter, BioVie00000229.* BioVie provided confidential correspondence to the FDA's Office of Scientific Investigations and Office of Compliance in November 2023, alerting the FDA to suspected scientific misconduct at certain NM101 sites. *Id.* at ¶ 16. Public disclosure of the FDA Letter will compromise any ongoing regulatory investigation concerning that suspected misconduct. Furthermore, the public has an interest in maintaining the effectiveness of the regulatory oversight systems, which is aided by candid and robust reporting from drug sponsors. Such reporting would be impeded if sponsors fear their concerns will become public documents subject to misinterpretation or misuse. Further, the public release of the FDA Letter could reduce the public's trust in clinical research based on limited information. Accordingly, the facts support maintaining the confidentiality of the FDA Letter.

*Pitts Audit Reports and Related Materials.*[3] BioVie engaged Pitts Quality Consulting to audit two NM101 sites in late 2022 and early 2023. *Id.* at ¶ 17. The Pitts Audit Reports contain analyses of preliminary clinical trial data, as well as references to BioVie's trial protocol and standard operating plans, all of which is useful information to BioVie's competitors in developing a competing product. Pitts Decl. ¶¶ 4-5; *see also Deluca v. Farmers Ins. Exch.*, 2019 WL 13202012, at *2 (N.D. Cal. May 15, 2019) (sealing audit findings that disclosed information about defendant's business operations). Indeed, even the specific vendors used for NM101, as identified in the Pitts Audit Reports, is non-public, proprietary information that is not shared without a sponsor's consent, because it can be used by competitors to gain an advantage in the execution of their respective

---

[3] This category of documents refers specifically to the documents Bates labeled: PITTS00002704, PITTS00002712, PITTS00002718, and PITTS00004248.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

studies, resulting in commercial harm. Pitts Decl. ¶ 6. There is also a strong public interest in promoting internal assessments of compliance and other investigatory processes that would be chilled by the public disclosure of audit reports.

Plaintiffs also seek to de-designate notes taken by Pitts and used in conducting and completing Pitts' audits (PITTS00004248). Pitts' notes not only include the same types of confidential information contained in the Pitts Audit Reports (discussed above), but they also include snippets and screenshots of CRC's standard operating procedures, and references to the same, throughout the document. Pitts Decl. ¶ 7. A contract research organization's standard operating procedures are proprietary and treated as highly confidential in the biopharmaceutical industry because these processes and procedures reflect accumulated expertise and competitive strategies for delivering high-quality clinical research services. *See Izzo*, 2016 U.S. Dist. LEXIS 48977, at *2-3; *Bailey v. Ndoc*, 2022 WL 684965, at *1, n.2 (D. Nev. Mar. 8, 2022) (protecting a defendant's "confidential operating procedure"). Disclosure of this information would harm CRC by giving competitors direct access to their internal processes. Pitts Decl. ¶ 8. And again, there is a strong public interest in maintaining the confidentiality of audit notes that are essential to completing the audit and ensuring compliance with quality controls. Further, public disclosure of an auditor's working notes that contain initial impressions and tentative observations would lead to confusion based on identified deficiencies that ultimately were determined not to exist or were sufficiently corrected or addressed.

***GeoSera Audit Reports.***[4] Plaintiffs also seek to de-designate draft audit reports provided by GeoSera, which similarly include proprietary information regarding BioVie's protocol and clinical study plans. Morse Decl. ¶ 18. Public disclosure of the GeoSera Audit Reports implicates the same harm as detailed above in regard to the Pitts Audit Reports. *Id*. at ¶ 19. Also, similar to the Pitts Audit Reports, these documents were never intended for public use, but rather, for corporate decision making and regulatory use. *Id*. at ¶ 20. Public disclosure of them would discourage sponsors from pursuing investigatory processes when conducting clinical trials.

---

[4] This category of documents refers specifically to the documents Bates labeled BioVie00003433, BioVie00003691, BioVie00003693, BioVie00003694, BioVie00003781, BioVie00012908, and BioVie00013978.

Accordingly, the Statistical Analysis Plan, Protocol Deviation Plan and Deviation Reports, FDA Letter, Pitts Audit Reports, and GeoSera Audit Reports warrant confidential treatment.

### B. Documents That Can Be De-Designated Except for Limited, Redacted Portions

The documents in this category contain information that could harm third parties if it were publicly disclosed, including trial participant identifiers and information linking specific clinical sites to suspected misconduct or protocol violations. Accordingly, BioVie respectfully asks that the Court apply limited redactions to the documents to maintain the confidentiality of such information, before de-designating the remainder of each document. *See Harper v. Nevada Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1041 (D. Nev. 2021) (holding redactions proper if "confidential information can be easily redacted while leaving meaningful information available to the public").

***Redactions Identifying Sites Reported to IRB.*** Redactions should be applied to three documents (BioVie00002369, BioVie00002618, BioVie00002755) to remove clinical site identifiers from submissions to the Institutional Review Board ("IRB") and communications related to the same. As an initial matter, IRB submissions are not public-facing but rather are part of a protected process for assessing the safety and ethics of the clinical trial and examining patient-facing information. Morse Decl. ¶¶ 21-22. Importantly, as evidenced by Plaintiffs' interpretation, these documents can be misconstrued as evidence of unreliable data, which would prejudice third parties if the IRB submissions are made public. (*See* ECF No. 73, p. 2.) Further, the documents at issue disclose a specific clinical site through identification of site personnel. Disclosing this information will undermine candid and timely reporting to the IRB from both site investigators and other institutions, which is critical to the IRB's identification and resolution of issues affecting the health and safety of trial participants. Moreover, BioVie's proposed redactions are narrowly tailored to remove only the identifying information in the documents.

***Redactions Linking Specific Sites to Suspected Misconduct or Protocol Violations.[5]*** Similarly, the documents Plaintiffs seek to de-designate that link specific clinical sites to suspected

---

[5] This category of documents refers specifically to the documents Bates labeled: PITTS00002749, PITTS00002753, PITTS00002701, BioVie00002126, BioVie00002139, BioVie00003690, BioVie00010285, BioVie00010295, BioVie00011291, BioVie00011710, BioVie00012925,

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

misconduct or protocol violations should be redacted to remove site identifying information. Many of these documents relate to the audits performed by Pitts or GeoSera and include findings or other information entitled to confidential treatment, including PITTS00002749, PITTS00002753, PITTS00002701, BioVie00002126, BioVie00003690, BioVie00010285, BioVie00010295, BioVie00011291, BioVie00011710, BioVie00012925, CTRL00000044, CTRL00001477, CTRL00000958, CTRL00000718, CTRL00001149, and CTRL00000630. Similarly, BioVie00002139 discusses protocol deviations associated with a specific site number. Like the audit reports, some of these documents also contain analyses of preliminary clinical trial data and other useful information to BioVie's competitors in developing competing products. Pitts Decl. ¶ 9. Limited redactions of site identifiers help to eliminate harm, protect private and public documents, and allow the majority of these documents to be publicly disclosed.

***Redactions Identifying Study Participants.***[6] It is well-established that "[t]he presence of non-party personally identifying information . . . unquestionably constitutes good cause for protection." *Campos*, 2024 WL 5187690, at *4 (holding redactions proper to protect personally identifying information). These documents contain subject identification numbers and identify the specific clinical study site where the subject was enrolled.[7] Certain of these documents, including BioVie00002126 and PITTS00002753, also contain other demographic information such as race, age, and familial status. A subject ID coupled with other identifying information, such as a subject's medical history or trial-related events, risk identification of the specific individual study participants. Morse Decl. ¶ 14. Further, while the information contained in one document may not be enough to identify an individual, given the number of documents with health information tied to the same subject identifier, it is possible that subject identities could be deduced across multiple documents that Plaintiffs seek to de-designate now and as the case progresses. Morse Decl. ¶ 14.

CTRL00000044, CTRL00001477, CTRL00000958, CTRL00000718, CTRL00001149, and CTRL00000630. Additionally, for CTRL00001477, phone numbers were redacted as personal-data identifiers.

[6] This category of documents refers specifically to the documents Bates labeled: PITTS00002749, PITTS00002753, BioVie00002126, CTRL00000958, BioVie00002341, and BioVie00002677.

[7] The first three digits of the subject ID numbers also contain the site number, which should be redacted for the reasons explained above (e.g., BioVie00002341 and BioVie00002677).

- 10 -

Publicly disclosing subject identifiers would violate study participants' privacy interests and result in embarrassment. Therefore, subject identifiers must be redacted. Here too, BioVie's proposed redactions are narrowly tailored to remove only the identifying information in the documents.

### C.    Documents that Can Be De-Designated

After conferring with potentially interested third parties, Defendants agree that the following documents can be de-designated: BioVie00001601, BioVie00001686, BioVie00002132, BioVie00002422, BioVie00002658, BioVie00003673, BioVie00005141, BioVie00008151, BioVie00008612, and BioVie00011227.

## V.    CONCLUSION

For the foregoing reasons, Defendants request that the Court deny Plaintiffs' motion as to the following documents and maintain their confidentiality designations: BioVie00005146, BioVie00008218, BioVie00000229, BioVie00001600, BioVie00001602, BioVie00001675, BioVie00001687, BioVie00001708, BioVie00002133, BioVie00002141, BioVie00002342, BioVie00002423, BioVie00002660, BioVie00002679, BioVie00003674, BioVie00004520, BioVie00004711, BioVie00005143, BioVie00008153, BioVie00008613, BioVie00011229, PITTS00002704, PITTS00002712, PITTS00002718, PITTS00004248, BioVie00003433, BioVie00003691, BioVie00003693, BioVie00003694, BioVie00003781, BioVie00012908, and BioVie00013978. In the alternative, if the Court finds that any or all of these documents should not be treated as Confidential, Defendants' respectfully request that the Court permit them to propose limited redactions to those documents.

Defendants also request that the Court deny in part Plaintiffs' motion as to the following documents, and maintain confidentiality only as to the information Defendants propose to redact in each document as illustrated in Exhibit 3 to this Opposition: BioVie00002369, BioVie00002618, BioVie00002755, BioVie00002126, BioVie00002139, BioVie00002341, BioVie00002677, BioVie00003690, BioVie00010285, BioVie00010295, BioVie00011291, BioVie00011710, BioVie00012925, PITTS00002749, PITTS00002753, PITTS00002701, CTRL00000044, CTRL00001477, CTRL00000958, CTRL00000718, CTRL00001149, and CTRL00000630.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 S Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135
702.784.5200

Dated March 13, 2026.                    Respectfully submitted,

**SNELL & WILMER, LLP**

BY: */s/ Bradley T. Austin*
Patrick G. Byrne, Esq.
Bradley T. Austin, Esq.
1700 S Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Telephone: 702.784.5200
Facsimile: 702.784.5252
Email: pbyrne@swlaw.com
 baustin@swlaw.com

**BAKER & HOSTETLER LLP**

Douglas W. Greene, Esq. (admitted *pro hac vice*)
Genevieve G. York-Erwin, Esq. (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Email: dgreene@bakerlaw.com
 gyorkerwin@bakerlaw.com

Marissa A. Peirsol, Esq. (admitted *pro hac vice*)
mpeirsol@bakerlaw.com
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone: 614.462.2656
Email: mpeirsol@bakerlaw.com

*Attorneys for Defendants BioVie Inc., Cuong Do, and Joseph Palumbo*

- 12 -

**CERTIFICATE OF SERVICE**

On March 13, 2026, I served the foregoing document on all parties appearing in this case when filing said document through the court's PACER system with automatic e-service on all persons who have registered for e-service on PACER for this case.


/s/ Lyndsey Mosbey
An employee of Snell & Wilmer LLP

**INDEX OF EXHIBITS TO DEFENDANTS BIOVIE INC., CUONG DO, AND JOSEPH PALUMBO'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE CONFIDENTIALITY DESIGNATIONS (ECF NO. 73)**

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| 1 | Declaration of David E. Morse, Ph.D. | 001 – 004 |
| 2 | Declaration of Jeanine Pitts | 005 – 006 |
| 3 | Defendant's Proposed Redactions | 007 – 084 |

4902-2605-1943