**ALDRICH LAW FIRM, LTD.**
John P. Aldrich, Esq.
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel: (702) 853-5490
Fax: (702) 227-1975
Email: jaldrich@johnaldrichlawfirm.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Lead Plaintiff
and Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE BIOVIE INC. SECURITIES LITIGATION | Case No. 3:24-cv-00035-MMD-CSD<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO STRIKE CONFIDENTIALITY DESIGNATION** |

Lead Plaintiff Anthony Rinaldi and additional named plaintiff Mark Hill (collectively, "Plaintiffs"), respectfully submit the following in reply and further support of their Motion for an Order striking Defendants' "Confidential" designation from the documents listed in Exhibit 1 of the Declaration of Adam M. Apton ("Apton Decl.") (ECF No. 73-2).

## I.    INTRODUCTION

The docket in this action now illustrates one of the many problems that courts and litigants must deal with when one party indiscriminately mass designates documents as "Confidential" even when they do not deserve it. After nearly a year of virtually no docket activity whatever, multiple motions have mushroomed, nearly all stemming from Defendants' improper "Confidential" designations and the necessity that documents be filed "under seal" without any legitimate factual or legal basis. Neither "compelling reason" nor "good cause" exists to keep these materials under seal and, with that in mind, the parties should not be obligated to try and do so every time a document is referenced in or attached to a public filing.

Defendants have produced approximately 3,500 documents to date—all of which have been marked "Confidential" under the Stipulated Protective Order (ECF No. 63). Of these 3,500 documents, there are 64 so far that are especially relevant to the pending claims of securities fraud against Defendants. These documents show in no uncertain terms that Defendants knew the NM101 trial was rife with study protocol violations. Consequently, many of these documents are featured in Plaintiffs' motion for leave to amend and proposed amended complaint (ECF No. 66). While provisionally marked "Confidential" by Defendants under the Stipulated Protective Order, that designation has now been challenged successfully and must be retracted or stricken. The mere fact that Defendants profess some sensitivity around the content of the documents is insufficient to carry their burden.

## II.    ARGUMENT

### A.    Defendants Have No Legal Basis to Maintain the "Confidential" Designations.

The existence of the Stipulated Protective Order on its own does not provide Defendants with a legitimate basis to maintain the "Confidential" designations currently in place. *See* Stipulated Protective Order at ¶1 ("this Stipulated Protective Order *does not confer blanket*

*protections* on all disclosures or responses to discovery and that the protection it affords from public disclosure and *use extends only to the limited information or items that are entitled to confidential treatment* under the applicable legal principles") (emphasis added). *See also Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2019 WL 1552293, at *1 (N.D. Cal. Apr. 9, 2019) (rejecting "wholesale designations of deposition transcripts" as "Confidential" because protective order required "restraint and care" when making designations). Courts routinely hold that "where a confidentiality designation is predicated upon a stipulated protective order, the party seeking to uphold the designation bears the burden of demonstrating that particularized harm will result from disclosure. . . . The producing party's good-faith reliance on the stipulation is insufficient to carry that burden." *Campos v. Arizona Bd. of Regents*, No. CV-24-00987-PHX-JJT, 2024 WL 5187690, at *4 (D. Ariz. Dec. 20, 2024)(internal citation omitted).

Defendants also fail to articulate any particular harm that would materialize if the documents were de-designated. While they attempt to rely on the Declaration of David Morse, BioVie's Chief Regulatory Officer, he does not specify any actual harm that will occur from disclosure but instead only speculates about risks that *could* occur. *See*, *e.g.*, Declaration of David E. Morse (ECF No. 86-1), ¶¶5, 12 ("The SAP is full of proprietary information that can be used by BioVie's competitors to expedite the development process and study design for competing drugs at BioVie's expense" and "Public disclosure of the Deviation Reports would provide BioVie's competitors with proprietary, strategic information they otherwise would not have, and which they could use to BioVie's detriment, and thus would cause commercial harm to BioVie."). Dr. Morse makes these conclusory statements without anything to back them up, such as identifying any *particular* competitor or other interested party that would even be interested in seeing the material at hand. In truth, there is none; the only parties interested at this point time are Plaintiffs and other investors that feel they BioVie concealed material adverse information about the NM101 study while it was being conducted back in 2022 and 2023. Absent evidence of *particularized* harm, there is no basis for designating these documents "Confidential" (let alone keeping them under seal). *See*, *e.g.*, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 789 F. Supp. 3d 760, 771 (N.D. Cal. 2025) (denying motion to seal where movant "fail[ed] to provide facts that

3

could support the finding that this information is likely to cause competitive harm if disclosed; to the contrary, it only highlights the information's confidential designations and then raises the hypothetical specter of competitors frustrating and jeopardizing its work"); *United States ex rel. Doe v. Biotronik, Inc.*, No. 2:09-cv-3617-KJM-EFB, 2015 U.S. Dist. LEXIS 144447, at *20-21 (E.D. Cal. Oct. 22, 2015) ("Biotronik has offered no particularized explanation of harm. Its attorneys' declarations sketch only rough outlines of hypothetical competitive and litigation difficulties.").

Tellingly, Defendants have dropped their "Confidential" designations on nearly a dozen documents "[a]fter conferring with potentially interested third parties." ECF No. 86 at 11:5. These records include several "protocol deviation reports"[1] which, confusingly, are the very same type of materials that Dr. Morse claims in his declaration should be kept "Confidential." *See* Declaration of David E. Morse (ECF No. 86-1) at ¶¶10-15. Consequently, it appears that Defendants are attempting to pick-and-choose which "protocol deviation reports" should be de-designated and which should not when, in reality, they all include the same type of information. Defendants' willingness to declassify *some* of the reports proves Plaintiffs' point—that the reports should not have been classified to begin with and certainly do not deserve continued "Confidential" treatment now.

The remainder of the materials that Defendants claim require "Confidential" treatment consist almost exclusively of materials produced and/or belonging to third-parties, such as Pitts Quality Consulting, GeoSera Inc., and Cognitive Research Corporation. *See* ECF No. 86 at 7-8. Yet even though Defendants conferred with these third-parties, they fail to produce anything from them to support their requests for continued "Confidential" treatment. In fact, the only third-party declaration produced, which is from Pitts Quality Consulting, does not even advocate for the confidential treatment of the Pitts Audit Report. While it is clearly carefully worded, the declaration does not say that the Pitts Audit Report should be treated as "Confidential." *See* ECF No. 86-2. If these third-parties could not be bothered to submit a declaration in support of Defendants' opposition, then it stands to reason that Defendants' desire to keep the materials

---

[1] BioVie00001686, BioVie00002132, BioVie00002422, BioVie00002658, BioVie00005141, BioVie00008151, BioVie00008612, and BioVie00011227.

"Confidential" is unfounded; indeed, any desire to keep the materials "Confidential" based on some obligation owed to the third-parties certainly fails to substantiate Defendants' current position. Without any evidentiary support from these third-parties, Defendants' request to maintain their confidentiality fails. *See Playup, Inc. v. Mintas*, No. 2:21-cv-02129-GMN-NJK, 2024 U.S. Dist. LEXIS 176110, at *5 (D. Nev. Sep. 26, 2024) (denying confidentiality with respect to the non-party documents where defendants "provided no factual showing that good cause exists for sealing. Instead, the sole basis for the sealing request is that non-party FTX designated the information as confidential pursuant to the stipulated protective order, but that designation does not (standing alone) create a basis for sealing once the document is filed with the Court."); *accord Bridge v. Credit One Financial*, No. 2:14-cv-01512-LDG-NJK, 2015 U.S. Dist. LEXIS 42084, at *2-3 (D. Nev. Mar. 31, 2015); *Barnum v. Equifax Info. Servs., LLC*, No. 2:16-cv-02866-RFB-NJK, 2018 U.S. Dist. LEXIS 121032, at *3-4 (D. Nev. July 19, 2018).

**B.      Defendants' Request for "Limited" Redactions Is Unfounded.**

Defendants ask for limited redactions on certain documents, seemingly as a fallback position in recognition of the conclusion that the documents themselves do not warrant "Confidential" treatment. *See* ECF No. 86 at 9-10. While Defendants' concessions are appreciated and helpful, they still miss the mark because the redactions they seek are still unwarranted and without factual or legal grounds. Specifically, Defendants ask that "site identifiers" remain redacted but fail to explain how the site numbers listed in the documents (*e.g.*, XXX-145) would yield any usable information to anyone interested. Defendants go on to say (without support) that "Disclosing this information will undermine candid and timely reporting to the IRB from both site investigators and other institutions" (*id*. at 9) but cite nothing for support (not even Dr. Morse's declaration). Thus, it remains entirely conclusory how or why leaving *coded* site identifiers unredacted would have any impact on anything.

Similarly, Defendants ask to redact "subject identification numbers" without explaining how or why *numbers* (not names) reveal any information to anyone about anything. Instead, Defendants rely on Dr. Morse's *speculation* that "[a] subject ID coupled with other identifying information, such as a subject's medical history or trial-related events, risk identification of the

specific individual study participants." ECF No. 86 at 10:18-20. If patient *names* or other *identifiable* information were contained in the documents, then redactions would certainly be appropriate but that is not the case.

Finally, Defendants wish to redact information showing the "sites" where the trial "misconduct" occurred. *Id*. at 9-10. This information strikes at the heart of this case where Plaintiffs allege that certain sites were hotbeds for patient data fraud that ultimately led to the complete collapse of the NM101 trial. While the number and types of "protocol deviations" that occurred at particular sites may result in "embarrassment" to BioVie, that does not support the "Confidential" treatment requested by Defendants. *See, e.g.,Kamankana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."); *Orgain, Inc. v. N. Innovations Holding Corp.*, No. 8:18-01253 JLS (ADS), 2021 WL 9928662, at *2 (C.D. Cal. Aug. 30, 2021) (rejecting "confidential" designation because "embarrassment" did not constitute good cause or particularized harm).

[*Signature blocks on following page*]

6

## III.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that their motion be granted in its entirety.


Dated: March 20, 2026                    Respectfully submitted,

**ALDRICH LAW FIRM, LTD.**

/s/ *John P. Aldrich*
John P. Aldrich, Esq.
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel: (702) 853-5490
Fax: (702) 227-1975
Email: jaldrich@johnaldrichlawfirm.com

*Liaison Counsel for Lead Plaintiff*
*and Liaison Counsel for the Class*


**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff*
*and Lead Counsel for the Class*